In the Matter of the Estate of EUGENE J. PETROSEMOLO, Deceased.

Surrogate's Court, New York County, June 14, 1934.

*Albert M. Yuzzolino,* for the petitioner Allessandro Sapelli and another.

*Hirson & Bertini,* for the administratrix.

*Albert A. Wald,* special guardian.

*Frank, Weil & Strouse,* for the petitioners Andrea Camboni and another.

*Harold J. Jones,* for the petitioner Giuseppe Contratto and others.

*Abel Elk,* for the petitioner Francesco Macaluso.

*Zalkin & Cohen,* for the National City Bank of New York.

FOLEY, S. The objections to the account of the administratrix herein are disposed of as follows: (1) The claim of Francesco Macaluso is allowed by consent at $52.50 as a general claim against the estate. (2) The claim of F. Vitelli & Son, Inc., is allowed by consent at $266.71 as a general claim. (3) The claim of Alberto Contratto, doing business as Giuseppe Contratto, is allowed as a preferred claim in the sum of $1,048.43. (4) The total claim of Andrea Camboni is fixed at $13,106.81. Of such claim, this creditor is entitled to a preference in the sum of $608.50. The balance thereof, $12,498.31, is allowed as a general claim. (5) The total claim of Alberto Cavalli is allowed at $9,810.97, of which he is entitled to a preference in the sum of $274.10. The balance of $9,536.87 is allowed as a general claim. (6) There were three separate claims filed against the estate by Allessandro Sapelli: (a) A claim in the sum of $1,300, about which there is no dispute and which is allowed by consent as a general claim in that amount; (b) a claim for $3,723.71, and (c) a claim for $2,331.05. The

amounts of the latter two claims are not disputed, but it is contended by the creditor that they are preferred claims and by the administratrix that they are general claims against the estate. The claims are predicated upon the delivery by the claimant, as principal, to the decedent, as agent, of 145 cases of merchandise, which have been sold, but the proceeds of which have not been paid to the claimant.

Included within claim (b) were ninety-five cases of merchandise, of which eighty-eight cases were sold by the decedent, and seven by the administratrix after his death. Included within claim (c) were fifty cases, ten of which were sold by the decedent and forty cases pledged by the decedent for a loan with the Banca di Napoli Trust Company.

It is conceded by the administratrix that as to the seven cases involved in claim (b), sold by her after the decedent's death for the sum of $343.39, the claimant is entitled to a preference. The balance of claim (b), however, amounting to $3,380.32, must be held to be a general claim. The claimant has failed to trace and identify this balance of $3,380.32 in the hands of the administratrix as the proceeds collected by the decedent for the merchandise sold by him. These proceeds were received by the decedent between September 28, 1931, and December 29, 1931. He died leaving an insolvent estate on December 30, 1931. It is true that the proceeds properly belonged to the claimant for whom the decedent was acting as agent. They were, in effect, trust funds for which the decedent was accountable to the claimant. He is not entitled, however, although a trust creditor, to a preference over general creditors of the decedent merely because of the nature of his claim. (*Matter of Cavin* v. *Gleason*, 105 N. Y. 256.) In order to follow trust funds which have been appropriated by a trustee and mingled with his own funds, they must first be traced and identified as such. (*Ferris* v. *Van Vechten*, 73 N. Y. 113; *Matter of Fox*, 92 id. 93; *Matter of Cavin* v. *Gleason, supra; Matter of Hicks*, 170 N. Y. 195; *Holmes* v. *Gilman*, 138 id. 369; *Cole* v. *Cole*, 54 App. Div. 37.) The decedent had four bank accounts. There is no evidence here to show in which of the four bank accounts of the decedent the proceeds of the sale of this merchandise were deposited. They might have been deposited in varying amounts in the four banks or they might have been deposited entirely in one account. Each of the bank accounts at some time or other subsequent to the date when the proceeds were received, fell considerably below the amount of such proceeds, one bank account at the date of death of the decedent being as low as $392.29. None of the funds at the time of death had been earmarked as the funds of the creditor.

The contention of the claimant that since the total funds in the decedent's bank accounts at the date of his death exceeded the amount of the trust moneys he is entitled to recover as a preferred claimant against the estate, is without merit under the decisions.

In respect of claim (c), amounting to $2,331.05, I hold that the claimant is entitled to a priority of payment out of the estate funds in that amount. Claim (c) comprised ten cases sold by the decedent in small lots and forty cases pledged by the decedent with the bank as security for a loan. The administratrix redeemed the pledged merchandise by the payment to the bank of the sum of $1,958.30, and sold such merchandise, receiving a net sum therefor of $2,761.53. Title to the merchandise was at all times in the claimant. The decedent had no authority to pledge the merchandise for a personal loan. The act of the decedent constituted a wrongful conversion of property belonging to the claimant. The right of the creditor to reclaim his property, so long as its identity was not lost, cannot be disputed. (*Baker* v. *New York Nat'l Ex. Bank,* 100 N. Y. 31; *Tompkins* v. *Morton Trust Co.,* 91 App. Div. 274.) The administratrix by the redemption of the property acquired no title to the merchandise. No title could be acquired by any one except a person who had in good faith purchased the property or loaned money, relying upon the apparent title of the seller or pledgor. (*Tompkins* v. *Morton Trust Co., supra.*) The general creditors of the decedent could not benefit by the unlawful conversion of the merchandise.

The reasoning and the conclusions in the decision of the Appellate Division, First Department, in *Matter of Tompkins* v. *Morton Trust Co. (supra),* cogently apply to the facts in the present proceeding. There, 100 shares of stock owned outright by a customer of a firm of stockbrokers were illegally pledged with a bank along with stock of other customers which were properly pledged. The bank sold sufficient collateral to liquidate the loan. It did not sell the stock absolutely owned and improperly converted. It was held that the owner of that stock was entitled to delivery without the imposition of any part of the loan and free from any lien whatsoever. INGRAHAM, J., writing for the court (at p. 279), stated: "As to all the world, except the pledgee who has actually and in good faith advanced money upon the apparent title conferred by the owner of the shares upon his bailee or agent, the owner is entitled to the stock." It was further held that the general creditors were not entitled to contribution upon the liquidation of the loan from the absolute owner of the shares, and that there was no right of subrogation in the general creditors to any rights possessed by the pledgee. Here the merchandise of the creditor in the hands

of the pledgee having been traced and identified, the claimant became entitled absolutely to the return of the merchandise or the proceeds thereof. In my opinion it is immaterial whether the administratrix redeemed the property or not, so far as this claimant was concerned. His right to a priority was established by the fact that the merchandise, wrongfully, converted, was identified in the hands of the pledgee (*Tompkins* v. *Morton Trust Co.*, *supra*), and in the proceeds thereof, in the hands of the administratrix. All that the administratrix did was to pay a valid and undisputed debt of the decedent which was due to the bank-pledgee. The general creditors cannot be held to have suffered in that situation.

No question has arisen as to the rights of other creditors similarly situated to the claimant here, where, if the equities were equal, contribution might be enforced within the particular class of claimants similarly situated. The claimant was entitled to his property or the proceeds of its sale.

Although the net proceeds of the sale of the pledged merchandise appears to be $2,761.53, the claim will be allowed as a preferred claim only in the sum of $2,331.05, since the creditor in the proof of claim (claim c) filed with the administratrix has limited himself to a demand for the latter amount.

The total claim of Allessandro Sapelli, therefore, is allowed in the sum of $7,300, of which he is entitled to a priority in the sum of $2,674.44. The balance of $4,625.56 is allowed as a general claim.

Submit decree on notice settling the account and directing payment in accordance herewith.