In the Matter of the Application of the DUNBAR & SULLIVAN DREDGING COMPANY, Respondent, to Fix and Determine the Liability of FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant, as Surety on the Bond of NELLIE J. MANNING, as Administratrix, etc., of EDWARD A. MANNING, Deceased.

Third Department, March 13, 1935.

*Rosendale, Dugan & Haines* [*P. C. Dugan* of counsel], for the appellant.

*George H. Rothlauf,* for the respondent.

BLISS, J. These are appeals from two decrees of the Surrogate's Court of Albany county. The decree of September 7, 1934, adjudged that of the sum of $1,067, withdrawn by the administratrix from the National Commercial Bank and Trust Company of Albany, $1,000 belonged to and was the property of the respondent Dunbar & Sullivan Dredging Company and that this company was entitled to the payment of the same, with interest, and directed that the accounting administratrix pay this sum to this company. The decree of October 4, 1934, adjudged that the liability of the appellant Fidelity and Deposit Company of Maryland, as surety on the official bond of Nellie J. Manning, as administratrix of the estate of said decedent, be fixed at the sum of $1,238.88, and directed the bonding company to pay this sum to the dredging company. The proof shows that at the time of the death of Edward A. Manning in December, 1930, he was the Albany superintendent for the dredging company in connection with some work in that vicinity and that this company had sent to him various sums of money with which to pay for the labor and other expenses of this work. These moneys had been deposited by him in an account in the National Commercial Bank and Trust Company in his own name and it was his practice to draw his own personal checks on this account in payment of these various items of company expenses. At the time of his death there was a balance of $1,067 in this account, of which the surrogate has found that $1,000 was the property of his employer and $67 belonged to the decedent. Shortly after decedent's death the president of the dredging company had a conversation with the widow and advised her of the fact that $1,000 of this account belonged to the dredging company and she replied

that she would have to be appointed executrix and that as soon as she was appointed she would deduct $45, which was to be the expense of the appointment, and send the company the balance of $955. The widow was appointed administratrix. The usual bond of the administratrix was furnished by appellant Fidelity and Deposit Company of Maryland for the faithful execution of the trust reposed in the administratrix and obedience by her to all lawful decrees of the Surrogate's Court touching the administration of the estate committed to her. Shortly after her appointment she presented to the bank the usual certificate of her appointment as such administratrix and waiver of the State Department of Taxation and Finance and the entire account was paid to her as administratrix. The dredging company presented to her a notice of claim setting up the facts in connection with its moneys held by decedent and alleging that the sum of $1,000 in the hands of decedent at the time of his death belonged to the claimant. It claimed these were trust funds in decedent's hands, were its property and not subject to the payment of any debts or expenses of the estate. The administratrix, however, expended all of the moneys so withdrawn from the bank for the payment of the widow's exemption, expenses of administration and funeral expenses.

Upon a compulsory accounting the attorneys for the surety company appeared for the administratrix. An account was filed showing that the total assets of the estate consisted of the above-mentioned bank account and a forty-eight dollar equity in an automobile and the distribution of the entire estate by the administratrix for the above purposes. Objections were filed by the dredging company, a trial had and the decree of September seventh made. Thereafter, on a separate proceeding to fix the liability of the surety on the bond of the administratrix, the decree of October fourth was made adjudging that the surety was liable for the misapplication by the administratrix of the moneys.

The surety company seeks to avoid liability on its bond by contending that the $1,000 in question was the property of the respondent at the time of the death of decedent and not a part of the assets of the estate, and, therefore, the bond did not cover such property.

Although there seems to be some conflict of authority among the American jurisdictions on this question (See 24 C. J. p. 1063, § 2547; 11 R. C. L. p. 310, § 358, and cases there cited), the rule prevails in our own jurisdiction that where a representative receives property in his representative capacity and it is established that such property did not belong to the decedent, the representative and the surety on his bond are liable for the proper disposition

of such property. *Matter of Hobson* (61 Hun, 504, General Term, First Dept.) is in point. The court there wrote: " But it is quite clear from the form in which the bond and mortgage were taken that he, as the administrator of the estate, with the will annexed, was entitled to collect this indebtedness. The contract authorized him, as the administrator of the estate, to receive the money and discharge the security. (*Caulkins* v. *Bolton*, 31 Hun, 458; 98 N. Y. 511; *Schluter* v. *Bowery, etc., Bank*, 117 id. 125.)

" He not only received the security by virtue of his appointment as the administrator of the estate, but he also collected the moneys upon it, and disbursed them, so far as they were paid out, in that capacity, and throughout his entire management of the estate acted in that manner, and not in any sense as a trustee of this trust. And after having received the security and collected and retained the money upon it in that capacity, he was liable to account for it under his obligations of administrator of this estate."

That decision was unanimously affirmed by the Court of Appeals (131 N. Y. 575) on the opinion below.

The Federal rule is in accord with that of New York. In *De Valengin's Administrators* v. *Duffy* (14 Pet. [39 U. S.] 282) the administrator had received in his representative capacity funds which belonged to another. Chief Justice TANEY, writing for a unanimous court, said: " The second question is one of more nicety, and the cases are not entirely reconcilable to each other. * * * But upon a full consideration of the nature, and of the various decisions on the subject, we are of opinion that whatever property or money is lawfully recovered or received by the executor or administrator, after the death of his testator or intestate in virtue of his representative character, he holds as assets of the estate; and he is liable therefor, in such representative character, to the party who has a good title thereto. In our judgment, this, upon principle, must be the true doctrine. * * * If the administrator is lawfully entitled to receive it in his representative character, and does so receive it, he is liable, in the same character, to the party entitled. Neale prosecuted the claim and received the money, as the administrator of De Valengin. He must account for it in the same character."

This principle appears to us to be sound and to be properly applicable in the instant case. Here the bank account stood in the name of the decedent and, therefore, was *prima facie* a debt due to the decedent and deemed an asset of the estate. (Surr. Ct. Act, § 202, subd. 8.) This account constituted almost all the property received by the administratrix. It was the duty of the administratrix to collect this account. It was properly paid to her by the bank

in her representative capacity as that was the bank's contract with decedent. She then proceeded to distribute these moneys in her representative capacity to creditors of the estate. At the time both of these decrees here appealed from were made the Surrogate's Court had jurisdiction to determine the claim of the employer to this specific property and to adjudicate the rights of the parties with respect thereto and make a decree directing payment of the funds to the employer. (Surr. Ct. Act, § 206-a, in effect Sept. 1, 1934.) Surely it could not be seriously contended that the surety on the bond of the representative of a deceased person would not be liable for the failure of such representative to comply with a decree made pursuant to this new section. Every act of this representative in connection with this bank account was performed in her representative capacity. Her failure to properly administer this fund was a breach of the trust reposed in her as administratrix of this estate and a violation of one of the conditions of the bond. Her failure to obey the decree of the Surrogate's Court made and entered on September 7, 1934, was likewise a breach of one of the conditions of the bond. We see no good reason why the decrees appealed from should not be affirmed.

The decrees should be affirmed, with costs to the respondent against the appellant.

HILL, P. J., RHODES, MCNAMEE and HEFFERNAN, JJ., concur.

Decrees affirmed, with costs to the respondent against the appellant.