In the Matter of the Estate of WESLEY A. KORNDER, Deceased.

Surrogate's Court, Westchester County, July 19, 1938.

*Yard, Oettinger & Sweet* [*Hogarth S. Sweet* of counsel], for the petitioner.

*Brush & Bloch* [*Gilbert P. Brush* of counsel], for the administratrix.

*Patrick S. Mason* [*Arnold Herzog* of counsel], for the State Insurance Fund.

*Boochever, McManus & Ostrow*, for Zenitherm Products, Inc., creditor.

*King & Dart*, for the Peoples National Bank and Trust Company of White Plains.

*M. D. Boarman*, for the New York Telephone Company.

*Joseph J. Ferone*, for James Celestino, creditor.

*Gresser & Walker*, for The Truscon Laboratories.

*Harry T. Pyle*, creditor, in person.

MILLARD, S. Petitioner has instituted a proceeding to impress a trust upon certain funds remaining on deposit in a " trust account " in The First National Bank and Trust Company of Tuckahoe, N. Y., to the credit of decedent at the time of his death, and for an order directing payment of said funds to her.

The material facts are not in dispute. Prior to his death on December 9, 1937, decedent was engaged in the general contracting business at Tuckahoe, N. Y. The evidence is that, at the time of his decease, he had contracts for the construction of the following houses: (1) A contract with Ervilla Farms Corporation for the erection of a residence and stable at Greenburgh, N. Y.; (2) a contract with Charlotte Vanderlip Conway for the erection of a house at Scarborough-on-Hudson, N. Y.; (3) a contract with this petitioner, Constance Sussman, for the erection of a residence at Pleasantville, N. Y.

On December 9, 1937, these contracts were in various stages of completion, and after the death of decedent his legal representative abandoned further performance of all work under said contracts. The evidence discloses that decedent had but one business bank

account in The First National Bank and Trust Company of Tucka-hoe, N. Y., which he carried in the name of " W. A. Kornder Trustee Account." All moneys received from the various jobs were, according to the testimony of his bookkeeper, deposited in this account. The testimony is also to the effect that petitioner's husband made and delivered to decedent the following checks: (1) Check in the sum of $750, dated October 22, 1937; (2) check in the sum of $1,000, dated November 9, 1937; (3) cashier's check of The First National Bank of Pleasantville in the sum of $3,000, dated November 29, 1937. All of these checks were indorsed " W. A. Kornder Trustee Account," and, according to the bank statement received in evidence, deposited in his said trustee account. It further appears from the bank statement that the only deposit made by decedent in this account between November twentieth and November twenty-ninth was the check in the sum of $3,000, dated November 29, 1937, above referred to. Between the latter date and the date of his death he deposited a check in the sum of $400, which he had received on account of a contract already completed. On the date of decedent's death the balance remaining in this account was the sum of $1,342.57, which sum has been transferred from the " trustee account " to the account of the administratrix of his estate. It is this fund which petitioner seeks to have turned over to her.

The administratrix of decedent's estate, in her answer to the petition, resists this application substantially upon the grounds that the estate is insolvent and that the fund in question is a general asset of the estate from which administration and other expenses must be paid. She further contends, as do Zenitherm Products, Inc., and the State Insurance Fund, creditors, that, because the funds received from petitioner were commingled with other funds and withdrawals made from time to time, petitioner's funds are incapable of identification.

It is not denied that petitioner has paid all outstanding claims for labor on her contract with decedent and has also arranged with the subcontractors for the completion thereof at her own expense. She has furthermore become subrogated to the rights of all out-standing claims against her contract with decedent by receiving from them assignments of their various claims in consideration of her payments to them. From a statement furnished her by the administratrix and received in evidence, it appears that claims aggregating $6,474.18 were outstanding against petitioner's con-tract at decedent's death. Under section 36-a of the Lien Law decedent was bound to hold the funds received by him in trust to be applied by him first to the payment of the various claims of

subcontractors, laborers, materialmen, etc., during the course of construction. That decedent did not comply with this statutory provision is self-evident.

Although several creditors have appeared in this proceeding, only the petitioner has made claim to the specific fund. The rights of the vigilant claimant must be protected.

In *Matter of Gaul* (160 Misc. 123), decided by the late Surrogate SLATER, the factual situation, as well as the various conditions of the parties, was very similar to that presented here. In disposing of some of the contentions raised by the respondents, he said (at p. 124):

" Although the claimant produced no direct proof that the money given to the decedent by Mrs. Shields was the same money that the decedent deposited in his bank account, the similarity of dates and amounts and all the circumstances surrounding the transaction are sufficient to justify such a conclusion. * * *

" Counsel for the executrix also argues that, by reason of the decedent having made many deposits and withdrawals subsequent to his receipt and deposit of these funds and the date of his death, it is impossible to follow the trust fund and that, by such acts, it has lost its identity. The decedent having unlawfully failed to remit to this claimant and having wrongfully commingled the trust funds with his own, is presumed, in making subsequent withdrawals, to have withdrawn his own funds and in the event such withdrawals reduced the amount below the amount of the trust funds, it is to be presumed that the wrongdoer intended to restore the amount with subsequent deposits. (*Matter of Holmes*, 37 App. Div. 15; affd., 159 N. Y. 532; *United National Bank* v. *Weatherby*, 70 App. Div. 279; *Matter of Accles*, 153 Misc. 421; affd., 245 App. Div. 743.) "

The court also in the above-cited case distinguishes *Matter of Petrosemolo* (152 Misc. 419), cited by the administratrix. In that case the decedent had four bank accounts and no proof was made as to where the funds in question were deposited.

Some question has been raised here as to the time when petitioner procured the assignments from the outstanding creditors of her contract. This court has wide equitable powers. (Surr. Ct. Act, § 40.) The doctrine of equitable assignment against a wrongdoer has long been applied by our courts in cases such as this. The court said in *Pittsburgh-Westmoreland Coal Co.* v. *Kerr* (220 N. Y. 137, at p. 143):

" The right of subrogation or of equitable assignment is not founded upon contract nor upon the absence of contract, but is founded upon the facts and circumstances of a particular case and

upon principles of natural justice, and generally where it is equitable that a person furnishing money to pay a debt should be substituted for the creditor or in place of a creditor such person will be so substituted. (*Crippen* v. *Chappel,* 35 Kan. 495.) "

I, therefore, hold that the funds now in the estate in the sum of $1,342.57 are impressed with a trust in favor of Constance V. Sussman and that she is entitled to receive the same against the administratrix and all other creditors.

Settle decree accordingly.