In the Matter of the Estate of HERMANN SIELCKEN, Deceased.

Surrogate's Court, New York County, July 1, 1941.

*Selden Bacon*, attorney *pro se* and for Duer, Strong & Whitehead and Leonard B. Smith, attorney *pro se*, petitioners.

*I. Gainsburg*, for Clara Sielcken Schwarz, respondent.

*Proskauer, Rose & Paskus*, for Terijon Weitling, respondent.

*Mathias F. Correa, United States Attorney*, for the United States of America, respondent.

FOLEY, S.   This is an intermediate application in the accounting proceeding in which a firm of attorneys and an individual attorney seek direction for the immediate payment to them of the balance of their fees, which was awarded pursuant to intermediate determinations of the surrogate.   The remaining sums due the firm of Duer, Strong & Whitehead, of which Mr. Selden Bacon was the active counsel for the executor, were fixed at $48,670.39.   To Mr. Leonard B. Smith was awarded a balance of $2,797 for services rendered. (*Matter of Sielcken*, N. Y. L. J. March 15, 1940, p. 1196; *Matter of Sielcken*, Id. Nov. 2, 1940, p. 1387.)   In these decisions and in the intermediate decrees made by the surrogate, payment of the amounts awarded was directed to be held in abeyance pending the final disposition of certain litigation arising out of violations of the Trading with the Enemy Act of 1917, brought by the United States government against the executor.   That litigation involved an attempt to vacate a judgment rendered in the sum of approximately $716,000 in the United States District Court for the Southern

District of New York because of lack of jurisdiction. The court of first instance vacated the judgment upon the plea of the Attorney-General of the United States on the government's behalf, and as successor to the Alien Property Custodian. The Circuit Court of Appeals reversed the vacatur. The Supreme Court of the United States affirmed the judgment of the intermediate appellate court. (*Sorenson* v. *Sutherland*, 109 F. [2d] 714; certiorari granted *sub nom. Jackson* v. *Irving Trust Co.*, 310 U. S. 621; affd., 311 id. 494.) Payment of the balances of the fees to the applicants here is again resisted by the United States government upon the ground that a new suit has been initiated by the United States by Robert H. Jackson, as then Attorney-General, and by the Treasurer of the United States, as plaintiffs against the Irving Trust Company individually and as executor of this estate, John S. Sorenson, a former partner of the decedent, and Brainard S. Avery who, it is alleged, acted as attorney and agent of certain of the parties involved. This action was begun in the United States District Court for the Southern District of New York. It is based upon a charge of conspiracy to obtain the return of property of the United States seized by the Alien Property Custodian as the property of a German corporation, Zentral Einkaufs Gesellschaft, which has been described in the course of the litigation by its initials Z. E. G. The government in its complaint alleges that as a result of the conspiracy to conceal certain violations of the Trading with the Enemy Act, the original judgment in the sum of $716,160.37 was obtained and that the amount of the judgment with interest was paid over by the Alien Property Custodian and that part of it was received by the executor of this estate as the liquidator of a partnership of which the decedent was a member. It is asserted that approximately $313,000 of these moneys found their way into the hands of the executor as assets of this estate. The balance of the moneys was paid over to other persons. In the complaint the final judgment obtained in the District Court is alleged to have been entered " as a result of the unlawful, fraudulent and collusive scheme and conspiracy of the defendants." The government apparently seeks a recovery from the corporate executor in its fiduciary capacity for the amount actually received by it and in its individual capacity in the total amount of the judgment upon the theory of a joint liability as a conspirator.

In the course of the administration of this estate, bitter and extensive litigation arose between the executor and the widow of the decedent as residuary legatee. One important phase of it involved an application to vacate certain decrees of this court settling the accounts. That litigation was disposed of adversely to the widow

by my decision in *Matter of Sielcken* (162 Misc. 54). Before the present controversy arose the executor paid over to the residuary legatee very large sums of money representing assets of the estate to which she appeared to be entitled at the time. As a condition of payment the executor required of the residuary legatee the giving of four refunding bonds in the period from 1921 to 1931. In connection with the last two of these refunding bonds the residuary legatee was required to deposit certain securities as collateral with the Chase National Bank. At the time of the closing date of the pending accounting these securities and the cash in this collateral fund approximated $300,000. This fund constitutes the only immediate source of payment of claims against the estate either by way of administration expenses or debts. Aside from it there remains in the possession of the executor only the sum of $400 in cash to which has been added a further collection of approximately $10,000 derived within the past few months from a payment by the government apparently under a separate return of funds from the successor of the Alien Property Custodian.

The financial status of the estate has been further complicated by a claim asserted against the executor by one Terijon Weitling who seeks a right of recovery against the partnership of Crossman & Sielcken of which the decedent was a member. That firm was liquidated by the executor as the legal representative of the partnership. The Weitling claim is based upon an alleged interest in certain of the moneys received from the United States government under the so-called Z. E. G. judgment which has been subject to the two different suits by the government. It is stated in the account that the claim of Weitling approximated $104,000 as of December 1, 1937  That litigation has been pending in the Supreme Court of New York county and judgments entered in the action have been reversed by the Appellate Division. Disposition of the action remains for another trial.

To summarize the present situation of the estate, there is in the collateral fund as assets for the payment of administration expenses and debts, a sum approximating $244,000. There is separately in the hands of the executor only the sum of about $11,000 which is subject to certain claims for services of attorneys other than the applicants here. Thus, there are total available assets of about $255,000. As against these assets there are the claims of the attorneys who are the applicants here, aggregating $51,000, a further claim for the commissions of the executor in the sum of $19,000 and the claim of the United States government for $727,000, of which about $313,000 was actually paid to the executor. Again, there is the claim of Weitling (which, in effect, is based upon earmarked

funds within the control of the executor) of $104,000 which, with interest and costs, may possibly be the subject of a total recovery of at least $120,000.

As I construe the complaint of the government in its action against the executor, a recovery of specific moneys traced through the executor and over to the residuary legatee is sought. If successful the government will recover far more than the present available fund within the control of the executor either directly in its own hands or indirectly in the collateral fund. Under such circumstances it would be an abuse of power to direct the payment of the balance of the attorneys' fees sought by the applicants here. Even if the government were unsuccessful and its suit decided favorable to the estate, there would still remain the final determination of the Weitling claim for identified moneys which came into the hands of the executor.

It is an elementary rule of the law of administration of estates that where moneys have been traced and identified as the funds of another person, they may not be subjected to the payment of funeral expenses, administration expenses, including commissions, or the debts of the decedent. Such funds and property do not constitute estate assets and their misapplication or diversion to improper purposes constitutes a breach of trust. (*Matter of Manning*, 244 App. Div. 9; affd., *sub nom. Matter of Dunbar & Sullivan Dredging Co.* v. *Fidelity & Deposit Co.*, 268 N. Y. 690; *Matter of Hackfeld*, 171 Misc. 727; affd., 259 App. Div. 707; leave to appeal to the Court of Appeals denied, 283 N. Y. 778; *Matter of Kornder*, 168 Misc. 553; *Matter of Accles*, 153 id. 421; affd., 245 App. Div. 743.)

In *Matter of Hackfeld* (*supra*) the government of the United States asserted a somewhat similar claim to that presented here upon the ground that large amounts of moneys had been paid by the Alien Property Custodian under a mistake of law as to the citizenship of the decedent and specifically that he was a German national and an alien enemy. An application was made by the attorney for the ancillary executor for the payment of his compensation. The application was denied by me under the principal authority of *Matter of Manning* (*supra*). My determination was sustained by the appellate courts. After the disposition of the appeals the government has thus far succeeded in its suit.

It would be obviously improper, under the circumstances in the present case, to authorize the diversion of funds which may ultimately be decided to be recoverable by the United States government because of violations of the Trading with the Enemy Act by persons directly or indirectly connected with German named concerns or operations in the World War of 1917–1918.

Mr. Bacon, one of the applicants, or his firm, Duer, Strong & Whitehead, have received very generous payments on account of their fees. These payments aggregate $101,000. Mr. Smith, the other applicant, has likewise received substantial payments on account. When the pending litigation in the Federal and State courts has finally been disposed of they will be entitled to the prompt payment of the balances due them if moneys are available. Until then the virtue of patience must be practiced.

The directions contained in the intermediate decrees for the payment of fixed balances to the applicants here, necessarily entitled them to the payment of interest from the date of each decree.

The prior directions of the surrogate authorizing certain payments for administration expenses in no way affect the disposition of the present application. These distributions were made in the exercise of the discretion of the surrogate and with the express acquiescence of the representatives of the government. The vigorous opposition of the attorneys for the United States government to the present application and the dwindling assets are sufficient reasons for the stoppage of further payments. The question of payment is reserved for future determination when free funds of the estate, either directly in the possession of the executor or in the Chase National Bank as depository, become available for payment and exempted from other claims.

After the final disposition of the litigation pending in the Federal and State courts, the executor or its attorneys or any other party interested in the estate may apply upon written notice for a further hearing with a request for appropriate relief.

Submit order on notice accordingly.