In the Matter of the Estate of JACOB H. JACOBSEN, Deceased.

Surrogate's Court, New York County, February 10, 1942.

*Joseph A. Cox,* for the public administrator of the county of New York, petitioner.

*Saxe, Bacon & O'Shea* [*William J. O'Shea, John H. Johnson* and *Henry J. Kennedy* of counsel], for the Société Anonyme des Anciens Etablissements Hotchkiss & Cie., John G. Saxe, William J. O'Shea and John H. Johnson, respondents.

*Milbank, Tweed & Hope* [*Timothy N. Pfeiffer* and *William J. O'Connell* of counsel], for the Chase National Bank of the City of New York, respondent.

FOLEY, S.    The public administrator of New York county initiated this discovery proceeding against the Chase National Bank of the City of New York and the Société Anonyme des Anciens Etablissements Hotchkiss & Cie. (hereinafter referred to as Hotchkiss & Co.) for the purpose of enforcing delivery by the bank of moneys deposited with it under an account maintained in the name of the decedent, J. H. Jacobsen.    The amount of the account is substantial, aggregating approximately $900,000.

Hotchkiss & Co. is a French corporation.    It had its principal office in Paris.    It had been engaged for many years in the manufacture of artillery, munitions and motor vehicles.    It was brought into the proceeding under process which was duly served upon it. In addition, its attorneys in fact have appeared.    The company, in its answer, asserted that it is the owner of the account and entitled to the moneys therein.    It further alleged that the decedent was an agent of the company in Europe for several years and that in November, 1939, it was decided to send him to the United States to act for it chiefly as agent in the purchase of equipment, steel, machines and materials in this country; that during the period from November, 1939, until the death of the decedent in July, 1940, Hotchkiss & Co. from time to time transmitted by cable to the decedent large sums of money to finance his purchases for the company and that all of the moneys so transmitted were deposited in the individual account of the decedent in the Chase National Bank.    It is also alleged that from time to time the decedent withdrew sums from the account to pay for purchases made on behalf of the company and for the expenses of its agency in New York.

The respondent bank has asserted no claim on its own part to the account or to the moneys deposited in it, except an allowance for its expenses in this proceeding.    It has, however, raised a preliminary question as to the jurisdiction of the Surrogate's Court to compel the payment by the bank or to make an appropriate decree determining the issues as between the public administrator

representing the estate and Hotchkiss & Co. as a rival claimant to the account.

Specifically the bank asserts that a deposit of moneys in an account constitutes a debt and that this court has no jurisdiction under sections 205 and 206 of the Surrogate's Court Act to enforce the collection of a debt.

These contentions are overruled. There is complete jurisdiction in this court under the applicable statutes and the more recent decisions of the Court of Appeals to compel the delivery of moneys in a bank account in the name of the decedent to the administrator, executor or other legal representative of the estate. There is, moreover, full and complete power and authority to determine the ownership of the fund as between the representative of the estate and a claimant to the same account. (*Matter of Akin*, 248 N. Y. 202; *Matter of Raymond* v. *Davis*, Id. 67; *Matter of Wilson*, 252 id. 155.)

The general powers and jurisdiction of this court are set forth in section 40 of the Surrogate's Court Act. The predecessor section contained in the Code of Civil Procedure was comprehensively extended by the general revision of the practice and procedure of this court enacted in 1914. In the historical analysis of these powers, the enlarged provisions of the first paragraph of that section become important. They authorize the surrogates to " administer justice in all matters relating to the affairs of decedents, * * * to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest * * *."

They grant power to adjudicate " all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires." In its form after the 1914 amendment there followed the recital of eight different classes of proceedings. The appellate courts in their interpretation of what is now section 40 had held that equitable jurisdiction only extended to the eight classes of proceedings specifically enumerated. (*Matter of Holzworth*, 166 App. Div. 150; affd., 215 N. Y. 700, decided in 1915, and *Matter of Mondshain*, 186 App. Div. 528, decided in 1919.) In particular it was held that this court had no equitable jurisdiction in proceedings to discover property withheld from an estate.

In 1921, in order to correct the narrow limitation of these decisions, section 40 was amended in a significant and important manner. The amendment gave notice " that the powers that are specific shall hereafter be read as being ' in addition to and without

limitation or restriction on ' the powers that are general * * *.''
(Cardozo, Ch. J., in *Matter of Raymond* v. *Davis*, *supra*, decided
in 1928.) The language quoted in that sentence had been inserted
by the amendment made in 1921. In his opinion Chief Judge
Cardozo continued: " ' Concentration of jurisdiction as to deced-
ents' estates ' * * * is the purpose clearly revealed in the
statutory scheme. ' The State has empowered surrogates in unmis-
takable language, and it is not the function of the courts to dis-
cover or to fashion reasons for thwarting the manifest policy '
(per Thomas, J., in *Matter of Coombs*, 185 App. Div. 312, 314).
To remit the claimant to another forum after all these advances
and retreats, these reconnaissances and skirmishes, would be a
postponement of justice equivalent to a denial. If anything is due
him, he should get it in the forum whose aid he has invoked.''

Again, in 1924, the Legislature made broadening amendments
to subdivision 4 of section 40 and sections 205 and 206 of the Surro-
gate's Court Act, which relate to discovery proceedings. (Laws of
1924, chap. 100.) Previous to those amendments a mere transfer
of the assets by the respondent before the time of the trial left the
court without power to enforce as against him the payment of the
proceeds of its sale or its value if it had been converted by him.
The property sought could thus be conveyed from one person to
another and a series of discovery proceedings against the successive
transferees might all terminate futilely. The court was still without
power to follow the proceeds of the property wrongfully sold or dis-
posed of and withheld from the legal representative of the estate.
By the amendments of 1924 a sweeping change was made. The
court was given the power not only to direct the delivery of the prop-
erty but, if it had been diverted or disposed of, to decree payment of
the proceeds or its value or to impress a trust upon the proceeds
or to make any determination which a court of equity might decree
in following trust property or funds. (Surr. Ct. Act, § 206.)

It was in the light of this historical background that Judge
Lehman wrote in *Matter of Akin* (*supra*). It is significant that it
was decided within a few days after the decision in *Matter of Ray-
mond* v. *Davis* (*supra*). The question at issue in the *Akin* case was
the determination of title to the moneys in a bank account. Up to
a few days before the death of the decedent, they were maintained
in a deposit account in his name. The respondent presented to
the bank a draft or order, apparently signed by the decedent, for
the payment of the entire fund on deposit. The bank honored the
draft and the moneys were thereupon transferred to a new account
in the same bank in the name of the respondent. The surrogate
after a trial held that title was in the estate. The claim to a gift

by the respondent was overruled and a decree made pursuant to the provisions of section 206 of the Surrogate's Court Act, directing payment of the proceeds of the account to the administrator, the petitioner in the proceeding. In the Court of Appeals the decree was attacked for lack of jurisdiction in the Surrogate's Court. The contention was overruled. The effect of the amendments made to sections 205 and 206 by chapter 100 of the Laws of 1924, above referred to, was considered and they were given recognition and force. Judge LEHMAN in his opinion concluded with the statement, " If doubt as to the legislative intent had existed before, that amendment makes clear that in a discovery proceeding the Surrogate's Court has now jurisdiction to dispose of every claim to property which should be delivered to an executor, administrator or guardian."

*Matter of Akin* was cited with approval and followed in *Matter of Wilson (supra,* 158).

*Matter of White* (119 App. Div. 140, decided in 1907) is relied upon by the bank here to support its contention that a bank account is a debt and may not be made the subject of a discovery proceeding. In the face of *Matter of Akin,* it is of no pertinency in the pending proceeding because it construed the form of the section dealing with the general jurisdiction of this court and its specific statutory provisions relating to discovery proceedings as they existed previous to the amendments hereinbefore referred to. Again, Chief Judge CARDOZO's observations in *Matter of Raymond v. Davis (supra)* are illuminating. " Early decisions were made upon the basis of a different grant of power. * * * We must hold them superseded by the provisions of the statute."

Further reliance is placed by the bank upon the decision of the Appellate Division, Fourth Department, in *Matter of Hammer* (237 App. Div. 497; affd., 261 N. Y. 677). The facts in that case were substantially different from those here. But far from having any controlling effect in favor of the bank, it supports the conclusion that jurisdiction over moneys in an account exists in a discovery proceeding. Presiding Justice SEARS restated the rules that a discovery proceeding was limited to the recovery of specific personal property or moneys or the proceeds or value of such personal property and that a discovery proceeding may not be employed to enforce the collection of a debt. He cited *Matter of Akin* as authority for the existence of jurisdiction in the Surrogate's Court over deposits of moneys and stated that the " property may be intangible, such as a right to a bank account." In the *Hammer* case *(supra)* none of the moneys remained on deposit in the respondent bank. There was a claim that the estate funds had been with-

drawn by one of the executors, deposited in his personal account and diverted to his own use. The proceeding apparently was predicated upon the theory that the bank was liable for paying the estate funds with knowledge of the diversion. What was attempted to be enforced against the bank, therefore, was a liability ordinarily the subject of an action for damages sustained as a result of the bank's participation in the embezzlement. (*Bischoff* v. *Yorkville Bank,* 218 N. Y. 106; *Grace* v. *Corn Exchange Bank Trust Co.,* 287 id. 94; *Whiting* v. *Hudson Trust Co.,* 234 id. 394.) Finally, despite the expressed doubt as to the jurisdiction of the surrogate to make the decree, the Appellate Division put aside the jurisdictional question and significantly said, " we prefer to determine the controversy upon the merits." The affirmance by the Court of Appeals in the *Hammer* case was without opinion. By implication that court must be deemed to have followed its prior decisions in *Matter of Akin* (*supra*) and *Matter of Wilson* (*supra*) and to have sustained rather than overruled the jurisdiction of the Surrogate's Court in disputes involving bank deposits.

True, the relationship between bank and depositor is ordinarily denominated a debtor and creditor relationship. " However, a bank deposit is more than an ordinary debt, and the depositor's relation to the bank is not identical with that of an ordinary creditor." (*Gibraltar Realty Corp.* v. *Mt. Vernon T. Co.,* 276 N. Y. 353, 356; *Glennan* v. *Rochester Trust & S. D. Co.,* 209 id. 12, 17.)

In the present proceeding the specific funds at the date of death were and now are in the name of the decedent. The recovery of the specific amount of the deposit and not any award of damages against the bank is involved. These moneys on deposit are specific property within the proper scope of sections 205 and 206 of the Surrogate's Court Act.

Moreover, the facts here are even stronger than in *Matter of Akin* (*supra*), because the bank account there at the time of death and at the time of the inception and determination of the discovery proceeding was in the name of the respondent and not of the decedent.

The bank here is, therefore, a mere custodian of presumptive estate funds and assets. The bank having asserted no claim, except for possible reimbursement of its expenses in this proceeding, is in no position to resist payment under the decree of the surrogate. Millions of dollars are annually paid in this State and throughout the country to legal representatives of estates by banks and trust companies upon the presentation of letters evidencing the status of the administrator, executor or other fiduciary, and in certain cases upon compliance with other requirements of the law, such as the production of waivers issued by the State tax authorities.

It would disrupt and impede the prompt and orderly collection of these estate funds if the financial institutions which carried the decedents' accounts could compel the fiduciary in every case or even in a small minority of these cases to sue at law for the recovery of the account. Where there are rival claimants to the fund the determination of title can be expeditiously made in a discovery proceeding. The determination in such a proceeding affords complete protection to the bank when the presumptive owner of the account and the rival claimant are properly before the court. (Banking Law, § 134.) Payment of the proceeds in accordance with the decree of the surrogate will exonerate the bank of any further liability to the rival claimants as fully as in an action of interpleader. This is especially clear in the pending proceeding where the only rival claimants to the fund invoke the jurisdiction of the court in their cross-applications for relief and the depository comes in only as a disinterested stakeholder.

In *Matter of Manning* (244 App. Div. 9; affd., 268 N. Y. 690, *sub nom. Matter of Dunbar & Sullivan Dredging Co.* v. *Fidelity & Deposit Co.*) the appellate courts had before them a controversy greatly similar to the one here. The decedent was a superintendent of a dredging company. In connection with his work the company had sent to him various sums of money with which to pay for labor and other expenses. The moneys were deposited by him in his individual name. At the time of his death there was a balance in the account, the greater part of which the surrogate had found was the property of his employer. A small amount represented the individual funds of the decedent. The widow was appointed administratrix. She collected the entire amount of the account from the bank and used part of the company's moneys for the payment of her personal exemption, for expenses of administration and funeral expenses. The Appellate Division held that the administratrix was entitled to collect the moneys in the first instance. (Citing *Matter of Hobson,* 61 Hun, 504; *Caulkins* v. *Bolton,* 31 id. 458; affd., 98 N. Y. 511; *Schluter* v. *Bowery Savings Bank,* 117 id. 125; *De Valengin's Administrators* v. *Duffy,* 14 Pet. [39 U. S.] 282.) The administratrix and her surety were held liable by the surrogate for the diversion of the company's funds. The opinion in the Appellate Division stated: " Here the bank account stood in the name of the decedent and, therefore, was *prima facie* a debt due to the decedent and deemed an asset of the estate. (Surr. Ct. Act, § 202, subd. 8.) This account constituted almost all the property received by the administratrix. It was the duty of the administratrix to collect this account. *It was properly paid to her by the bank* in her representative capacity as that was the bank's

contract with decedent." (Italics mine.) The material context of section 202 reads: " The following shall be deemed assets and go to the executors or administrators, to be applied and distributed as part of the personal property of the testator or intestate, and be included in the inventory: * * * 8. Debts secured by mortgages, bonds, notes or bills; accounts, money, and bank bills * * *."

The procedure outlined in *Matter of Manning* (*supra*) for the collection of the asset by the personal representative of the decedent and the transfer of it to the person legally entitled to it, also received judicial sanction in a prior decision in *Matter of Demko* (213 App. Div. 460). It was a discovery proceeding to compel an individual to turn over to the public administrator certain moneys which that person held as custodian of the decedent. The custodian of the fund raised the issue of the right of decedent's sister to the fund by virtue of a gift. In a *per curiam* opinion the Appellate Division, Fourth Department, held that the Surrogate's Court had jurisdiction to make an order directing delivery of the property to the public administrator. It is significant that this proceeding was initiated prior to the broadening amendment enacted in 1924 and discussed above. The respondent in the discovery was John Miller. The court said that at " the time of its delivery to Miller it was decedent's money. It never became Miller's, and justice requires now that it be returned to the administrator without prejudice to any rights that any third person or persons may have obtained growing out of any act of the intestate's. The facts mentioned bring the case within the language of section 205 of the Surrogate's Court Act as it stood at the time of the filing of this petition in December, 1923."

Section 205 of the Surrogate's Court Act was amended by chapter 343 of the Laws of 1939 so as to confirm the power in the surrogate to bring into the discovery proceeding claimants to the deposit or other property or the proceeds or value thereof, in order that a complete determination might be had. The explanatory note printed in the legislative bill sets forth the purpose of the amendment. The effect of that amendment is (1) to authorize a determination that the property in dispute is owned by the estate and should be paid or delivered to the legal representatives; (2) to authorize, where there is a single respondent or respondents claiming title asserting no conflicting claims as between themselves, a finding of ownership in such respondent or respondents; (3) where a determination is made that the estate is not entitled to delivery or payment, and where there is a conflict of claims between the respondents, who are third parties, the matter is remitted to another court which has jurisdiction to try disputes between individual parties.

*Matter of Brazil* (219 App. Div. 594, decided in 1927), cited by the bank here, does not sustain its contention of lack of jurisdiction. In that case the proceeding was one for the construction of the will. The bank was made a party respondent but no relief was asked against it. The surrogate construed the will and ordered the bank to pay the amount of the proceeds to one of the contending claimants. The reversal might have proceeded upon that ground alone. In so far as the decision went further and attempted to hold that there was no jurisdiction in this court to enforce the delivery of a bank account in a proper discovery proceeding brought against the bank and any rival claimant, it overlooked or misinterpreted the statutory enlargement of the jurisdiction of the Surrogate's Court. I am in accord with the view of Surrogate WINGATE in *Matter of Morris* (134 Misc. 374) that *Matter of Brazil* (*supra*) was overruled by implication by the Court of Appeals in *Matter of Akin* (*supra*).

The line of demarcation between the presence of jurisdiction in the court to enforce the payment of specific moneys actually held by a bank and the lack of jurisdiction where the discovery proceeding is attempted to be employed to collect a debt or to enforce a liability under contract, is clear. The surrogates have not hesitated to deny jurisdiction and to remit the parties to forums of general jurisdiction where there was an attempt to enforce a purely contractual obligation. (*Matter of Thoms*, 165 Misc. 398; *Matter of Campbell*, 145 id. 389; *Matter of Sichel*, 162 id. 2.)

The motion of the bank to dismiss the proceeding on the ground of lack of jurisdiction is denied.

Upon the merits of the proceeding the oral and documentary evidence adduced by Hotchkiss & Co. conclusively established that all the moneys on deposit in the decedent's name at the time of his death were the property of that company, subject to a possible setoff for salary or bonus or other claims due the decedent from the company. The transmissions of the funds have been traced from the Paris office of Hotchkiss & Co. through reputable bankers to the decedent and into the disputed account. The decedent's own written communications and oral and written declarations show without question his conscientious sense of honesty and his recognition that the moneys were not his but were those of his employer.

The sum of approximately $18,000 of the moneys in the disputed account has been made the subject of a judgment in the Supreme Court, New York County, in an action brought by the Atlas Drop Forge Company against the respondent bank here and the public administrator as the representative of the decedent's estate. The

Supreme Court there reached the same conclusion as the surrogate here. It adjudged that the moneys in the decedent's name in the respondent bank were the property of the respondent, Hotchkiss & Co., and directed final judgment requiring the bank to turn over to the sheriff of the county of New York, as the proceeds of a judgment previously secured in the action, the sum of $18,178.88.

Applying the rules in *Matter of Manning (supra)*, the surrogate makes the following further directions:

(1) The bank shall retain the amount of the judgment, with interest, obtained by the Atlas Drop Forge Company, subject to the terms of that judgment.

(2) The balance of the account shall be paid to the public administrator.

(3) The receipt and release of the public administrator for the amount paid to it and the release of Hotchkiss & Co. by its attorneys in fact will be an adequate and complete discharge, under the decree to be entered herein, of any liability of the Chase National Bank to the respondent company or to any other person whatsoever including any person interested in the estate of the decedent.

(4) The power of attorney executed by Hotchkiss & Co. recorded in this court is valid and effective.

(5) The public administrator shall promptly initiate a final accounting proceeding.

(6) It would appear at the present time that the public administrator should earmark the sum of $25,000 as a reserve for possible setoffs and counterclaims which may be due the decedent's estate for his unpaid salary or bonus or other claims.

(7) Adjudication is now made, subject to the foregoing setoffs and foregoing judgment, that the balance of the moneys in the account is the property of Hotchkiss & Co.

(8) No part of the moneys now or hereafter adjudicated as the property of Hotchkiss & Co. may be made the subject of deduction for commissions of the public administrator or administration expenses or funeral expenses or the personal debts of the decedent.

Submit decree on notice accordingly.