In the Matter of the Estate of EMANUEL KAHN, Deceased.

Surrogate's Court, New York County, November 21, 1942.

*Joseph A. Cox* and *Joseph T. Arenson* for James F. Egan, Public Administrator of the County of New York, petitioner.

*Harold W. Bissell* for Guaranty Trust Company of New York, respondent.

*Edward E. Bryde* and *Pieter J. Kooiman* for Mary Beffie, respondent.

*Philip L. Miller* for the State of the Netherlands, respondent.

FOLEY, S. The Public Administrator of the County of New York initiated this discovery proceeding against the Guaranty Trust Company of New York (hereinafter referred to as the trust company), for the purpose of directing it to deliver certain securities and moneys on deposit in the sum of $45,580.25, upon the ground that such properties were owned by the decedent and deliverable and payable to the petitioner as the legal representative of his estate. The petition was subsequently amended so as to include a further demand for the dividends which had been received by the trust company on the securities claimed to have been owned by the decedent.

Emanuel Kahn, the decedent, was a national of the State of the Netherlands and died at The Hague on June 30, 1941.

The trust company, in its answer, denied knowledge or information as to the fact of the death of the decedent and his ownership of the property in dispute. It further alleged that the securities in question here, along with others held under an agreement with the DeTwentsche Bank N. V. (hereinafter referred to as the bank), a Dutch financial institution, had been placed by the trust company to the credit of the bank in a custodian account. The moneys derived from dividends or other form of income thereon were similarly carried on the books of the trust company to the credit of the bank in a deposit account.

The trust company had further stated in a report filed in this proceeding in respect of the source and status of the

securities and moneys on deposit, that as a consequence of the influx of so-called "refugee claims," following the German occupation of European countries, it adopted a new method of entries upon its books. It said that the practice was adopted merely as a precautionary measure against overlooking the adverse claim pending a legal or other determination as to its validity. In accordance with that method, when a claim was asserted as to the securities here involved, the trust company placed them in a subaccount designated "DeTwentsche Bank, The Hague, Claimant: Emanuel Kahn."

Shortly after the inception of the proceeding, the State of the Netherlands, through its Ambassador at Washington, applied for leave to intervene. The application was granted by appropriate order. The contention of the Netherlands is based upon the Royal Decree of its government dated May 24, 1940, and effective as of May 15, 1940. Under its terms title to claims belonging to its nationals was vested in the State of the Netherlands. Accordingly, its original contention is that whether the securities and moneys were the property of its corporate national, the DeTwentsche Bank, or of its individual national, Emanuel Kahn, the decedent here, it was entitled to delivery and payment of them.

Support for the demand of the Netherlands was placed by its counsel upon the recent decision of the Court of Appeals in *Anderson* v. *N. V. Transandine Handelmaatschappij* (289 N. Y. 9.) In that case Chief Judge LEHMAN, writing for the court, sustained the effectiveness of the Royal Decree. The proprietary rights of that government exercised under the decree were held to be a bar to a levy under an attachment upon property and accounts which belong to its national at the effective date of the decree. The latter instrument had declared that the proprietary rights vested in the government "shall only be exercised for the conservation of the rights of the former owners." In his interpretation of this clause, Chief Judge LEHMAN stated: "Under its terms, the State becomes in effect a trustee for its subjects of their property which might otherwise be without protection and perhaps subject to seizure by a ruthless enemy." (P. 19.) He further declared that the public policy of the United States accorded with the public policy of our State in the recognition of the effectiveness of the decree.

In answer to the contentions of counsel for the Netherlands, the Surrogate indicated that in his opinion the *Anderson* case was not controlling in the existing proceeding. There, the

rights of living persons and of corporations only were involved. Here, the rights of the local representative of the decedent's estate and of the beneficiaries are required to be considered. In originally opposing the delivery of these assets to the legal representative of a decedent, the contention of the Netherlands is, in effect, that in its status as trustee, it has a paramount right to administer an estate for the benefit of creditors and distributees who may reside in New York or other parts of the United States. Under the terms of the decree, the rights vested in the State of the Netherlands " shall only be exercised for the conservation of the rights of the former owner " and restitution is to be made to " the former owners " after the period of the emergency shall have passed. In the case of a deceased owner, the property would apparently be held for the benefit of his distributees and creditors. The terms of the decree, therefore, brought into conflict a different rule of the public policy of our State, as confirmed by the United States Supreme Court, that is, the rule that in the administration of estates embracing property within our jurisdiction, the local law is superior to rights created under treaties or edicts of a foreign government where the decedent is one of its nationals. (*Matter of D'Adamo*, 212 N. Y. 214; *Rocca* v. *Thompson*, 223 U. S. 317.) That public policy must be deemed to be based upon the necessity of protecting the rights of domestic creditors, next of kin and legatees of estates.

Pursuant to this suggestion of the Surrogate, counsel for the Netherlands procured the consent of that government to withdraw its claim to the title to the funds under the Royal Decree. It consented to the administration of the estate by the Public Administrator. It reserved its right to claim title to any moneys distributable to one of its nationals as next of kin or otherwise. This consent to the administration of the estate under the laws of our State is a highly commendable act of courtesy and cooperation.

Upon the trial of the issues which remained in the proceeding, extensive testimony, oral and documentary, was submitted. Upon it the Surrogate finds the fact of the death of Mr. Kahn on June 30, 1941. He also finds that the decedent died intestate and was survived by two daughters as his only distributees under the law of intestacy of his domicile, the Netherlands. One of them, Mary Beffie, left Holland in July, 1940, with her husband and two children and made her way via Switzerland and Portugal to the United States. She presently resides in New Jersey, which she and her husband regard as

her permanent home. The other daughter is a nonresident of the United States. Mr. Kahn was, and his daughters are, of the Jewish faith. The daughter, Mrs. Beffie, and her husband have made applications for citizenship in the United States and in 1941 they received their first papers. The evidence conclusively shows her legitimate purpose and the absence of the slightest indication of any intent to benefit the enemies of the Netherlands or of our country. The expression of policy of the State Department of our government, which is set forth in the opinion in the *Anderson* case (*supra,* p. 17) appears to give recognition to the protection of the rights not only of our citizens but also of residents of this country regardless of citizenship.

Upon the question as to the issue of title to the property sought to be recovered herein, the Surrogate finds that the securities in the possession of the trust company and the accrued dividends thereon and the cash balance of $45,580.25 were the property of the decedent at the time of his death and constitute assets of his estate which should be delivered and paid to the Public Administrator. The testimony of Mr. Beffie and the documentary evidence conclusively sustain this determination. Of impressive weight is the " statement of account " made by the DeTwentsche Bank in which the specific securities were listed and the amount of the cash balance to the credit of the decedent in the trust company set forth with its certification that on the 12th day of July, 1940, they were the property of the decedent on deposit in the name of the bank in the Guaranty Trust Company of New York.

Other documents received in evidence show that the transfer of the property would have been formally made in the lifetime of the decedent by instructions of the bank to the trust company except for the prohibition of the German government in Holland through its bureau called " The Exchange Institute."

In its report the trust company has certified that at all times the bank had a credit balance in dollars account with it amounting to $45,580.25 which is claimed as an asset of the estate. The Surrogate finds that that amount represents moneys due the decedent and his estate from the trust company. The Surrogate specifically finds upon the evidence that the DeTwentsche Bank has no interest whatsoever in either the securities, the proceeds of redemption, the dividends or the other moneys which have been found to be assets of the estate.

The following directions are therefore given:

(1) The trust company shall turn over to the Public Administrator, the securities set forth in the petition, together with the proceeds of one redeemed investment and all dividends received on all of the securities and the foregoing cash deposit of $45,580.25. (*Matter of Jacobsen,* 178 Misc. 479; *Van der Veen* v. *Amsterdamsche Bank,* 178 Misc. 668 [SHIENTAG, J.].)

Preliminary to delivery and payment, the necessary license required by Executive Order and the regulations thereunder must be obtained.

(2) The receipt and release of the Public Administrator will be an adequate and complete discharge under the decree to be entered herein of any liability of the trust company in the turning over of the property and moneys.

(3) The Public Administrator shall promptly initiate a final accounting proceeding and cause a citation to issue and be served upon the DeTwentsche Bank N. V. and the other necessary parties to the proceeding, including the trust company and the State of the Netherlands. Thereby a final decree conclusive upon all parties will be made. (*Anderson* v. *N. V. Transandine Handelmaatschappij,* 289 N. Y. 9; *Matter of Jacobsen, supra.*)

The Public Administrator, in his discretion and in the exercise of his best judgment, may sell the securities. The proceeds of sale and all other moneys within the estate shall be held by him, subject to the payment of intermediate administration expenses, until the final accounting and the decree to be entered therein. No distribution to Mary Beffie, the distributee who is a resident of the United States, shall be made until such decree.

The claim of the State of the Netherlands to any part of the moneys of the estate, pursuant to its formal written reservation filed herein, will be determined in such accounting proceeding. There will likewise be determined in it (a) any rights of the Alien Property Custodian to payment of the moneys found due to the foreign distributee, or (b) whether such moneys shall be directed to be paid into the city treasury for her benefit, pursuant to section 269 of the Surrogate's Court Act.

Submit decree on notice accordingly.