In the Matter of the Estate of MARIA LIEBL, Deceased.

Surrogate's Court, Kings County, July 20, 1951.

*Daniel G. Connolly* and *Frank McCabe, Jr.,* for Hyman Wank, Public Administrator of Kings County, as administrator of the estate of Maria Liebl, deceased, petitioner.

*Herman E. Compter* for National City Bank of New York, respondent.

RUBENSTEIN, S. This is a discovery proceeding by the Public Administrator against the respondent, National City Bank, to obtain possession of personal property belonging to Maria Liebl, the decedent herein. It is undisputed that at her death she was a resident of this county. In 1934 she went to Czechoslovakia where she died about a year later. The property of which petitioner in this proceeding seeks to obtain possession are two bank books, one representing an account in the name of decedent in the Brevoort Savings Bank, Brooklyn, New York, account number 121342, the other an account in the Lincoln Savings

Bank, Brooklyn, New York, account number 27568, in the name of decedent in trust for Theresie Liebl or Theresia Liebl, her mother, who survived decedent and has since died, and certificates in the name of decedent for thirteen shares of Cities Service common stock. The respondent admits that the said property is held by it, but claims that it is held for the account of and at the disposal of Uverniustav v. Praze drive Kreditanstalt der Deutschen, a banking institution at Prague, Czechoslovakia (hereinafter referred to as the " Prague Bank "). The latter had instructed respondent to collect the bank balances, sell the stock and credit the proceeds to its account. Respondent was unable to carry out the instructions because of the lack of the necessary documents.

The Prague Bank is not a party to the proceeding. As a consequence, respondent urges that the proceedings be stayed pending the determination of an action pursuant to article 28-A of the Civil Practice Act to determine adverse claims of petitioner and the Prague Bank, stating that it may be impossible to obtain jurisdiction over the Prague Bank in this discovery proceeding. It contends that the amendment to section 205 of the Surrogate's Court Act, added by chapter 343 of the Laws of 1939, makes it clear that this court should not proceed unless and until the Prague Bank is brought into the proceeding. That amendment reads in part as follows: " If it shall appear from the petition or from the answer interposed thereto or in the course of the inquiry made pursuant to the order that a person other than the respondent in the proceeding claims an interest in the property or the proceeds or the value thereof, the surrogate may by the original order or by supplemental order, as the case may require, direct such additional party to attend and to be examined in the proceeding in respect of his adverse claim, and to deliver the property if in his control, or the proceeds or value thereof."

While undoubtedly it would be desirable to have the Prague Bank represented, nevertheless it is not a necessary party to this proceeding. The only necessary parties to a discovery proceeding are those who have knowledge, information, possession or control of property that should be inventoried by or delivered to the representative of the estate. (4 Jessup-Redfield on Surrogates Law and Practice [Rev. ed.], § 3060; see, also, *Matter of Demko,* 213 App. Div. 460.) The amendment to section 205 above quoted was designed, according to the revision note, to *authorize* the bringing in of third parties " who may claim title to or a right to possession of the personal property

or the proceeds thereof sought to be discovered by the representative of the estate." The amendment itself reads: " the surrogate *may*  \*  \*  \*  direct such additional party to attend and to be examined in the proceeding in respect to his adverse claim, and to deliver the property if in his control, or the proceeds and value thereof. Service ' of the order ' must be made  \*  \*  \*  and the payment, or tender  \*  \*  \*  of the sum required by law to be paid or tendered to a witness who is subpœnaed to attend a trial in the surrogate's court." (Emphasis supplied.) From the language used it is clear that the Surrogate has the authority to bring in the Prague Bank; it is likewise clear that the use of this authority is discretionary and was not intended to require the presence in this court of the Prague Bank in a discovery proceeding. The statute did not contemplate burdening the estate with the payment of the statutory fees necessary to bring it from Czechoslovakia merely because the Prague Bank transmitted to respondent the bank books and stock certificates for liquidation and credit to its account. The parties necessary to a determination of the right to possession are before the court, and in the exercise of its discretion the court, at this time, will not stay the proceedings in order to afford respondent further opportunity to take whatever steps it may deem advisable for its own protection.

The evidence before the court, taken in part from the respondent's translation of a communication from the Prague Bank in evidence, shows that these items are part of the estate of Maria Liebl who died in Czechoslovakia in 1935, and " who had her last permanent residence in New York " and the items " are being collected by the notary Dr. Ignaz Heidl as representative of the heirs." The court finds from all the evidence that the subject matter of this discovery proceeding was the property of the said Maria Liebl.

Respondent does not claim for itself any title to the property. However, it argues that the petitioner has no right to the immediate possession of the property for the reason that under the law of Czechoslovakia the Prague Bank is unable lawfully to give its consent to the transfer and delivery of said property without the consent and approval of the Czechoslovakian Ministry of Finance, and that the ministry has not granted such permission. This defense is based on the holding of the English Court of Appeal in *Kahler* v. *Midland Bank, Ltd.* ([1948] 1 All E. R. 811, affd. by the House of Lords [1950] A. C. 24, [1949] 2 All E. R. 621, 65 Times L. R. 663). It is insisted that the *Kahler* case makes it clear that the petitioner does not have the right to the immediate possession of the property.

This court is impressed with the opinions of the Law Lords in the affirmance in the *Kahler* case. The facts of that case so far as material are that Kahler brought an action in detinue against the Midland Bank to recover certain stock which had come into possession of the latter as the correspondent of a bank in Prague. Ownership of the plaintiff was admitted but his right to immediate possession was denied. Plaintiff had entered into arrangement while in Prague with banking organizations located there concerning his shares. All the lords concurred in the holding that there existed no contractual relationship between the plaintiff and the Midland Bank. However, concerning his right to immediate possession the lords divided 3–2. The majority, although Lord SIMONDS thought the lords were " in a region of artificiality " ([1950] A. C. 27, [1949] 2 All E. R. 624, 65 Times L. R. 666), held that the contract which plaintiff had entered into with the Czechoslovak bank was intended by the parties to be governed by the law of that country. This was the precise point which determined the decision.

The opinions of the majority are unanimous in the viewpoint that the plaintiff had his normal residence in Czechoslovakia at the time he made his original contract of bailment with the bank there and the parties intended thereby that the bailment should be governed by the law of that country. By the law of Czechoslovakia he could not get possession of the stock from his bailee there. Therefore, not having a right to the immediate possession under the law of the contract, he had no right of immediate possession in England.

It may be noted in passing that the court is in accord with Lord RADCLIFFE's statement in his concurring opinion that " If Mr. Kahler had indeed the immediate right to possession, the Midland Bank's possible embarrassments with the Bohemian Bank would not, as I see it, afford any defence, unless they could successfully establish that his authority to the Bohemian Bank to place the shares with them estops him from calling on them to ignore that bank's refusal of consent. That line of argument has not been pursued before us and I do not consider it further." ([1950] A. C. 55–56, [1949] 2 All E. R. 641, 65 Times L. R. 672.) His viewpoint of the case was, " The arrangement was made in that country by two persons there resident and subject to its laws." ([1950] A. C. 53, [1949] 2 All E. R. 640, 65 Times L. R. 672.)

The facts of the instant case differ materially from those in the *Kahler* case. The Public Administrator entered into no contractual relationship with the Prague Bank; his decedent

likewise entered into no such relationship. Kahler made his arrangements and intended that his contract should be governed by Czechoslovak law. Perhaps in turning over these items to the Prague Bank, Heidl, as the representative of the heirs under Czechoslovak law, intended that the contract he intended to make should be governed by that law; insofar as the Public Administrator is concerned, Heidl had mere naked possession of the property with no right as against the Public Administrator to retain possession. Unlike Kahler, Heidl had no right to subject this property to the law of Czechoslovakia because he had no right superior to the Public Administrator and could create no rights superior to his. Kahler did have the right to create in the Czechoslovak bank rights superior to his own, and by subjecting his contract to the law there give the right to immediate possession to the bank there. Unlike Kahler, Heidl had no rights of ownership and could not by his act create rights superior to the rights of the representative of the owner. The Public Administrator never intended to submit this property to the laws of that country and cannot be bound by the acts of one to whom he gave no authority. As to the Public Administrator, Heidl and the Prague Bank are merely the mediums by means of which the property found its way back into this jurisdiction, unfettered by the control laws which the respondent contends should be attached to it by force of Heidl's act.

To sustain respondent's position it would be necessary to infer that the decedent by entering into and remaining in a country for a certain period intended to subject her property wherever located to the fiscal control laws of that country. There is no principle of international comity which would be binding on this State to accord such fiscal laws recognition as to evidences of ownership which are transmitted here for liquidation. Rather, it seems to be the rule that the public policy of this State, based upon the necessity of protecting the rights of domestic creditors, distributees and legatees of estates, is paramount. (*Matter of Kahn*, 179 Misc. 939.) Moreover, it would seem to be a sorry state of international affairs if mere presence in a country were to subject all the property of a person to the international monetary laws of that country in the event that the person should die there and leave evidences there of ownership of property located elsewhere. No contention to that effect is pressed on the court.

In any event the distinction between the bank books and the certificates of stock and the rights and interests of which they are the representatives may not be lost sight of. While the

bank books and stock certificates are personal property (General Construction Law, § 39; *Matter of Jones,* 172 N. Y. 575; *Matter of Delaney,* 256 N. Y. 315) and are properly the subject matter of a discovery proceeding, they are merely the physical signs of the fundamental relationships of debtor-creditor and corporation-stockholder. The deposits were made in banks located in this county and the place of payment ordinarily is here. (Banking Law, § 238, subd. 3; *Smith* v. *Brooklyn Sav. Bank,* 101 N. Y. 58; *Myers* v. *Albany Sav. Bank,* 270 App. Div. 466, affd. 296 N. Y. 562.) The stock certificates evidence the ownership of rights and interests in a corporation existing by virtue of the laws of one of the United States. The *lex loci contractus* and the *lex loci solutionis* were intended by the parties to be governed by our laws, uninhibited by the supervention of the currency regulations of a foreign nation. To the legal relationships of the decedent the Public Administrator succeeds.

It has been stipulated that the law of Czechoslovakia is as it appears in the *Kahler* case. There it is said to be unlawful to transfer securities without the permission of the Czechoslovakian National Bank '' from a currency inlander to a currency foreigner into his ownership, as a pledge or for any other reason ''. ([1950] A. C. 32, [1949] 2 All E. R. 627, 65 Times L. R. 667.) The term ownership is significant, particularly when used in conjunction with the phrase '' as a pledge,'' for it thus appears that the prohibited transfer must be from one who, as owner, has the whole '' bundle of rights '' which constitutes the sum total of ownership. He would be able to pledge, or completely to divest himself of ownership, as Kahler would have been able to do. Heidl had no such rights of ownership. He could not lawfully pledge the stock certificates or the bank books because he had the mere naked possession of them. The full rights of ownership vested in the Public Administrator as the decedent's legal representative, not Heidl. Any act of Heidl in attempting to pledge or otherwise to transfer these '' securities '' would be a mere empty gesture; by such act he could not subvert the power of the Public Administrator to administer the property rights and interests located here; our public policy to protect creditors, distributees and legatees resident here would make his purported transfer a mere nullity, a transfer of form without the underlying substance. If then the Czechoslovakian law is to prohibit the transfer of *ownership* it does not apply to this case, for no act of Heidl could effectuate a transfer of Maria Liebl's property rights located here. It is unreasonable to assume that the Czechoslovakian law is

designed to prevent the transfer of the symbols of ownership only; it appears to the court that the Czechoslovakian law is designed to prevent the effective transfer of the whole bundle of rights which constitutes ownership.

The facts of the *Kahler* decision lend support to this interpretation of the Czechoslovakian law. There the " securities " sought to be recovered by Kahler were not registered in his name. For all practical purposes, they were equivalent to bearer shares. Kahler claimed only the beneficial ownership; there was no legal relationship of stockholder existing between him and the corporation; that relationship existed between the one having possession of the certificate and the corporation. Thus, the certificate itself represented more than the mere evidence of an existing relationship. Possession of the certificate carried with it all the fundamental, underlying property rights and obligations; the transfer of the certificate carried with it all the rights and interests which it represented. The term " ownership " as used in the Czechoslovakian law consequently had meaning in the *Kahler* case and the meaning is there well illustrated. In the instant case, any purported pledge or transfer by Heidl would carry with it none of the substantial rights and interests of ownership.

Assuming *arguendo* that these evidences of ownership are in themselves the " securities " the transfer of which the Czechoslovak law is designed to make unlawful, it does not follow that the transfer in this case is prohibited by that law. The *Kahler* case tells us who are " currency inlanders " and " currency foreigners ". The former are persons who had their *normal* residence in Czechoslovakia and who had lived there for at least one year. It is thus seen more is demanded to be considered a " currency inlander " than is needed by what we term domicile. Not only must Czechoslovakia be the *normal* residence; there must be, in addition, a residence of at least one year. Kahler had his normal residence in Czechoslovakia at the time his transactions took place; the fact was undisputed, and the English courts so found. In the instant case, respondent, while urging that it is ruled by the *Kahler* case, has failed to demonstrate that Maria Liebl had, at the time of her death, her normal residence in Czechoslovakia. Not only is there no proof of such residence but the communication from the Prague Bank stating that she " had her last permanent residence in New York " may not readily be reconciled with normal residence abroad. Moreover, while domicile is not the question here involved, the fact that she retained in the United States

the assets sought to be recovered herein is a circumstance strongly suggestive of normal residence here. (See *Dupuy* v. *Wurtz*, 53 N. Y. 556, 563.) Respondent's position that the pertinent Czechoslovak law as found in the *Kahler* case is applicable to the instant case finds no support in the evidence.

The Midland Bank based its case on the conjoint effect of the Czechoslovakian law and Kahler's contract of bailment with the Bohemian Bank; here there is no consensual arrangement between the Public Administrator and the Prague Bank, or any estoppel under which the former is barred from his right to immediate possession of this property; therefore respondent's position that the *Kahler* case is authority for refusing the right to immediate possession must fail. The situation in the instant case seems to be similar to Lord MAC-DERMOTT's (one of the minority) statement in the *Kahler* case. He said ([1950] A. C. 39, [1949] 2 All E. R. 631, 65 Times L. R. 668) : " Proceeding, then, on the basis that it was open to the respondents to show that the Bohemian Bank was entitled as against the appellant to possession, the next question is whether this has been done. As already indicated, the respondents alleged no proprietary interest in the Bohemian Bank or any claim to retention on foot of some charge or lien. They did prove, however, if the assumption I have made above as to the effect of the relevant Czechoslovakian law is justified, that the Bohemian Bank could not do anything to authorize them to hand the certificates over without breaking that law and, indeed, committing a criminal offense thereunder. Now if that were all and the respondents could say no more, I think it is clear that they would have no answer to the present claim. The law of another State will not of itself justify the detention or conversion of property in England which is wrongful according to the law of England. If a foreigner in this jurisdiction finds my watch the courts of this country will not allow him to keep it merely because the law of his own country forbids him, wherever he may be, to make restitution of articles of that sort."

The broad and simple ground of decision in the instant case is to be found in the passage in the judgment of Mr. Justice BLACKBURN in *Biddle* v. *Bond* (6 B. & S. 225, 231 [1865]), quoted by Lord MACDERMOTT: " the bailee has no better title than the bailor, and, consequently, if a person entitled as against the bailor to the property claims it, the bailee has no defense against him." The respondent, bailee, has no better title than the bailor, Prague Bank, or Heidl, and the Public Administrator is entitled to the property as against the latter.

The respondent will be directed to turn over to the Public Administrator, the petitioner, bank book number 121342 of the Brevoort Savings Bank and the certificates for the shares of stock in Cities Service. As to the bank book number 27568 of the Lincoln Savings Bank in the name of decedent in trust for Theresie Liebl or Theresia Liebl, the petition is dismissed. That account, on the death of decedent leaving her mother surviving, became the property of the mother. There is no proof that the tentative trust created by the opening of such account was ever revoked by decedent in her lifetime, and on her death the presumption arose that an absolute trust was created as to the balance of the fund on deposit at decedent's death in favor of the beneficiary named therein. That presumption has not been rebutted nor has petitioner established that any part of such fund will be required for the payment of decedent's debts or funeral expenses. (*Matter of Totten,* 179 N. Y. 112; *Morris* v. *Sheehan,* 234 N. Y. 366; *Matter of Reich,* 146 Misc. 616.) Therefore, petitioner is not entitled to the bank book of the Lincoln Savings Bank.

Upon the final accounting, the Prague Bank will be cited to prove such claims, if any, it may have against this property.

Submit decree, on notice, accordingly.