In the Matter of the Estate of THERESIE LIEBL, Deceased.

Surrogate's Court, Kings County, July 20, 1951.

*Daniel G. Connolly* and *Frank McCabe, Jr.,* for Hyman Wank, Public Administrator of Kings County, as administrator of the estate of Theresie Liebl, deceased, petitioner.

*Herman E. Compter.* for National City Bank of New York, respondent.

RUBENSTEIN, S. In this discovery proceeding, the Public Administrator seeks to recover a certain bank book, #27568, of the Lincoln Savings Bank in the name of Maria Liebl in trust for Theresie Liebl or Theresia Liebl, the same person. (For additional facts and contentions of counsel see *Matter of Maria Liebl,* 201 Misc. 1092, decided herewith and to which reference is hereby made.)

The instant proceeding is more closely analogous to the *Kahler* case (*Kahler* v. *Midland Bank, Ltd.,* [1948] 1 All E. R. 811, affd. [1950] A. C. 24, [1949] 2 All E. R. 621, 65 Times L. R. 663) than *Matter of Maria Liebl.* Theresie Liebl was a currency inlander. She was a party to forwarding this bank book through Heidl to respondent for collection. The original bailment was made in Czechoslovakia and, according to the majority in the *Kahler* case, it was intended that the bailment be governed by the law of that country. Under such law, she could not get possession of her bank book there; therefore, not having a right to immediate possession in Czechoslovakia, if she were to go to England and if the bank book were transmitted to a bank

in England, she would not have a right to immediate possession in England.

The persuasiveness, force and effect of the English decision and its applicability to identical facts in a sister common-law jurisdiction is well stated by Lord BUCKMASTER in *Donoghue* v. *Stevenson* ([1932] A. C. 562, 576), where in speaking of *Thomas* v. *Winchester* (6 N. Y. 397) he expressed the view '' That such cases can have no close application and no authority is clear, for though the source of the law in the two countries may be the same, its current may well flow in different channels.'' And in the same case, Lord ATKIN speaking of the opinion of CAR-DOZO, J., in *MacPherson* v. *Buick Motor Co.* (217 N. Y. 382), said (p. 598) '' Whether the principle he affirms would apply to the particular facts of that case in this country might be a question for consideration if the case arose.'' Not only does the current of law at times flow in different channels but differing conditions in the same channel may well cause the current to flow in different directions. Different factual conditions in the *Kahler* case would perhaps have led to a different conclusion. The conclusion therein reached and the premises upon which it is predicated nonetheless are questions for the consideration of this court. Moreover, this court is entitled to consider what has happened in this case and to view the situation primarily from the view of fact rather than theory. (*Russian Reinsurance Co.* v. *Stoddard,* 240 N. Y. 149, 158.)

In the *Kahler* case, the Lords were not inclined to treat the Czechoslovakian currency regulations as confiscatory or fiscal legislation of a foreign country, the existence of which the English courts are traditionally disposed to ignore. The facts of the instant case of which, of course, the English court was not cognizant, cast grave doubt on its premise that the regulations are not in fact fiscal or confiscatory.

Maria Liebl died in March of 1935. The letter of transmittal from the Prague Bank is dated October 4, 1937. Theresie Liebl died on March 6, 1941. A communication from the Prague Bank dated March 16, 1951, informed respondent, '' that we shall revert to your letter as soon as we obtain some information about the new whereabouts of Dr Ignaz Heidl and after this case will have been submitted to the Ministry of Finance.'' The court is told that respondent will receive an answer to its letter to the Prague Bank as soon as information is obtained about Heidl. It is thus suggested that there be further delay until information is obtained concerning Heidl who perhaps may not willingly come forward and make himself known to the Prague

authorities. As a result of these rules and regulations, the fact remains that for at least six years subsequent to the termination of World War II in Europe no action has been taken to secure for a distributee living in this State, a daughter of decedent and a sister of Maria Liebl, the share of her mother's estate to which she is entitled. Because of the inability of respondent to obtain from the Czechoslovakian authorities, the necessary documents, Maria Liebl's mother, the decedent herein, was deprived during her lifetime of the enjoyment of the money her daughter intended to give to her. Confiscation or appropriation of property does not necessarily connote the taking from one what she has already reduced to possession; a fiscal law may equally accomplish that result by keeping from her the full use and enjoyment of the property she is rightfully entitled to receive. Of course, there is no showing that under the present laws of Czechoslovakia decedent's daughter, living here, is entitled to share in her mother's estate; the court is relying on the principle that, on the common consent of civilized nations, the child is the natural successor to the property of her parent. This court feels that the child of the decedent is entitled to receive the property coming to her, if any, during her lifetime. Under the circumstances herein described, these currency regulations become the fiscal laws of a foreign country which we, as well as the English, are traditionally disposed to ignore.

A consideration absent from the *Kahler* case and here present is the necessity of protecting the rights of a domestic distributee. In the administration of estates embracing property within our jurisdiction it has been held that the local law is superior to rights created under treaties of a foreign government where decedent is one of its nationals. (*Matter of Kahn,* 179 Misc. 939, 943.) A fortiori our local law in similar circumstances is superior to foreign currency regulations. The consent of the foreign government, while a highly commendable act of courtesy and co-operation, is not prerequisite to an application of the rule.

As pointed out in *Matter of Maria Liebl* (*supra*), the property rights themselves, as distinguished from the evidences of ownership, have always had their situs in this country, not in Czechoslovakia. Assuming, nevertheless, that the transfer of those rights occurred in the latter country, it does not follow that, the evidences of ownership now being here, the laws of Czechoslovakia must be here accorded recognition. The property was sent here and was physically present here when the rights of a

domestic distributee arose. When Theresie Liebl sent the property here she impliedly submitted it to the law of this State, for it is here protected by our law, just as the bank book, as a bank book, in the *Estate of Maria Liebl* was subject to the laws of Czechoslovakia while physically present there. (*Olivier* v. *Townes,* 7 Martin [La.] 50.) The general rule that the transfer of a chose in action is governed by the law where the transfer is made is not without exceptions (*Guillander* v. *Howell,* 35 N. Y. 657; *Keller* v. *Paine,* 107 N. Y. 83), and when the property is located in another State, such transfer is not valid in that other State if the transfer conflicts with the interest of that State and its citizens. When the State which has possession of the property gives effect to the municipal laws of the State of transfer it does so upon a principle of comity. It has been said: " The municipal laws of a country have no force beyond its territorial limits, [99] and when another government permits these to be carried into effect within her jurisdiction, she does so upon a principle of comity. In doing so care must be taken that no injury is inflicted on her own citizens, otherwise justice would be sacrificed to courtesy, nor can the foreigner or stranger complain of this. If he sends his property within a jurisdiction different from where he resides, he impliedly submits it to the rules and regulations in force in the country where he places it. *What the law protects it has the right to regulate.*" (*Olivier* v. *Townes, supra,* p. 53. Emphasis in original.)

It may not be amiss to point out that comity is a sense of mutual regard founded on identity of position and similarity of institutions. (*Fisher, Brown & Co.* v. *Fielding,* 67 Conn. 91, 108; *Russian Republic* v. *Cibrario,* 235 N. Y. 255, 258.) As was said in *King* v. *Sarria* (69 N. Y. 24, 31): " It is the necessary intercourse of the subjects of independent governments, which gives rise to a sort of compact, that their municipal institutions shall receive a degree of reciprocal efficacy and sanction within their respective dominions. It is not the statutes of one community which extend their controlling power into the territories of another; it is the sovereign of each who adopts the foreign rule, and applies it to those particular cases in which it is found necessary to protect and cherish the mutual intercourse of his subjects, with those of the country whose laws he adopts; (*Per* Sir Saml. Romilly, *arguendo, Shedden* v. *Patrick,* 1 Macqueen's H. of L. Cases, 554.)" And it was said in *Russian Reinsurance Co.* v. *Stoddard* (240 N. Y. 149, 163–164, *supra*): "We give or deny the effect of law to decrees or acts of a foreign governmental establishment in accordance with our own public policy

* * * in determining our public policy in these matters common sense and justice must be consideration of weight.''

To give effect to the fiscal law of Czechoslovakia in this case, the court does not feel that it would be giving effect to our public policy to protect a domestic distributee; in this case it is necessary to refuse to adopt those fiscal laws to protect that distributee; the situation presented to the court shows that the currency laws are of a nature which·the courts are traditionally disposed to ignore; and the consideration of common sense and justice compels the court to ignore them.

In this case it may not be said that the Prague Bank owns something which we will help it to keep. Rather, it seems that decedent's daughter owns something which we will help her to get. (Cf. *Loucks* v. *Standard Oil Co.*, 224 N. Y. 99, 110.) The determination which the court reaches herein is not '' to suit the individual notion of expedience or fairness,'' (*Louks* v. *Standard Oil Co., supra,* p. 111.) It is in accord with the determination of the Secretary of the Treasury as to present conditions in Czechoslovakia (Code of Fed. Reg., tit. 31, § 211.3, subd. [a], as amd.; 16 Federal Register 1818; see, also, *Matter of Geffen,* 199 Misc. 756, and *Matter of Thomae,* 199 Misc. 940).

The respondent will be directed to turn over Bank Book No. 27568 of the Lincoln Savings Bank to the Public Administrator. Upon the final accounting, the Prague Bank will be cited to prove such claims, if any, it may have against this property.

Submit decree, on notice, accordingly.