In the Matter of the Public Administrator of the County of New York, as Administrator of the Estate of JAMES TREVOR, Deceased, Respondent. MANUFACTURERS TRUST COMPANY, Appellant.

First Department, July 7, 1953.

*William J. Granger* of counsel (*Judson W. Pearl* with him on the brief; *Simpson Thacher & Bartlett*, attorneys), for appellant.

*Joseph T. Arenson* for respondent.

BERGAN, J. The Manufacturers Trust Company had on deposit in a special interest account under the name of " Earl Clifford " the sum of $1,083.50. On April 24, 1949, the decedent James Trevor died intestate. In his lifetime he had received public assistance from the department of welfare of the city of New York in excess of $6,000. Letters of administration were issued to the Public Administrator and a claim for reimbursement for the expenditure of relief money has been filed. The letters of administration referred to the decedent as

" James Trevor, also known as Paul Weber and Karl Clifford."

The administrator presented to the Surrogate a petition alleging that decedent had opened an account with the bank " in the name of Earl Clifford " and that on his death " there was on deposit to his credit " the sum of $1,083.50, asking inquiry and discovery into this deposit and a direction that the bank " return to " the administrator " the property of the decedent " in its possession.

The bank's answer was threefold. It denied that part of the petition which alleged that the account in the name of Clifford was opened by decedent and was decedent's property at his death; it alleged the conclusion of law that the relationship between it and " its depositor, Earl Clifford " was " that of debtor and creditor " and that the Surrogate had no jurisdiction to decree that the bank " pay over the funds in " the account to the administrator; and lastly it alleged a further conclusion of law that it " can not with impunity " pay the funds to the administrator " in the absence of unequivocal proof " of the identity of deceased and depositor.

The only factual issue raised by the bank is identity, and on that the proof seems to us adequate and satisfactory that the decedent and the depositor were the same person. On this appeal the appellant bank makes no point that the decision on the factual issue of identity is against the weight of evidence or that it is not grounded on sufficient facts.

At the hearing the bank advised the Surrogate that it wanted to be " sure that there is proper identity " and that it was " not satisfied in this instance " and that unless it be satisfied " as to identity " it " will resist."

If the issue of depositor-decedent identity was resolved to the satisfaction of the Surrogate, satisfies us, and is not questioned by the bank on appeal as to its sufficiency, all this ought to amount to a dissolution of the apprehensions of the bank expressed in its second separate defense that it cannot " with impunity pay " the fund to the administrator " in the absence of unequivocal proof " of identity. What the bank means by the risk of this, of course, is the risk of judicial action charging it twice, but the question of what, in turn, is " unequivocal proof " is a question for a judge and as far as we can penetrate the problem, that has been placed beyond further risk to the bank. If that is so, the bank would not be aggrieved by the order from which it appeals. The order adjudged that the account was the property of decedent and directed that the proceeds be delivered to the administrator.

The nature of the controversy here affects its disposition. No justiciable assertion is made by the bank based on the nature of the debtor-creditor relationship. This is not a case where the debtor denies the debt; the debtor merely expresses an apprehension that the wrong identification of its creditor may be made by a court. It does not question the factual conclusions in which the findings of identity are made and makes no claim of title to the fund.

Thus the question here becomes whether the decedent owned the proceeds of the deposit. This certainly is " property " and it is the kind of property which seems to fall within the provisions of section 205 of the Surrogate's Court Act which authorizes a proceeding to discover money " or other personal property " or " the proceeds " or the " value thereof ". This language covers much more property than a thing capable of being found, picked up physically and handed over. It includes the property-equivalent " value " which would surely contemplate a fund held in the banker-depositor relation.

The amendment to section 205 by chapter 343 of the Laws of 1939 deals broadly with the power of the Surrogate to bring in new parties claiming " an interest in " the property or " the proceeds or the value thereof " and to make a direction to such added parties to deliver the property or proceeds or value. This cannot be read without thinking that it was the legislative sense that adverse claims by any party of whose person the Surrogate had acquired jurisdiction in a discovery proceeding, originally or by supplemental order, were within the Surrogate's power to adjudicate.

Whatever the cases held before the statute was amended in 1939, the statute in its present text seems to bring to the Surrogate for adjudication a claim of an administrator against a bank for discovery and payment over of the proceeds of a deposit, with or without an adverse claim to the proceeds.

The history of this section with the procedural implementation in section 206 shows a consistent broadening of the Surrogate's power of adjudication over the property in the course of discovery. Even before the 1939 amendment, Judge LEHMAN, for the unanimous Court of Appeals, held in 1928 that the amendments made to sections 205 and 206 by chapter 100 of the Laws of 1924 gave the Surrogate power " to dispose of every claim to property which should be delivered to an executor, administrator or guardian " (*Matter of Akin*, 248 N. Y. 202, 206).

That was a case of adverse claims of title to a bank account between the administrator and the son of decedent in whose name the account stood at the time of the proceeding. It was distinctly argued by the depositor-son who claimed title to the deposit that the Surrogate had no jurisdiction to determine the issue, but the court found the Surrogate's authority in the 1924 amendments which were held to have met the former infirmities in jurisdiction considered in *Matter of Hyams* (237 N. Y. 211). (Cf. *Matter of Raymond* v. *Davis,* 248 N. Y. 67.)

In *Matter of Hyams* the court held that the Surrogate could not determine the title to property in dispute; and specifically that he could not follow the proceeds of bonds owned by the testator which were used by his widow to buy other securities. The court in *Matter of Akin* was of opinion that this limitation of inquiry and direction to '' specific personal property '', as expressed in *Matter of Hyams,* had been broken through by the 1924 amendment.

The decree should be affirmed.

CALLAHAN, J. (dissenting). The sole issue raised by the bank on this appeal is whether the Surrogate's Court has jurisdiction to compel the depository to pay the balance of the account to the administrator of its deceased depositor.

The bank has a right to decide whether it will insist on compliance with the legal proprieties or act on the basis of business judgment. '' Nevertheless, when the jurisdiction of an important court is the main issue, our duty is plain. The public interest and the interest of jurisprudence might be endangered by permitting this issue to go unchallenged '' (*Matter of Miller,* 257 N. Y. 349, 357).

It is so well settled that the relation between a bank and its depositor is one of debtor and creditor that we need not cite authority for the proposition. Nor is there any doubt that an action to recover a bank deposit must be one founded on debt (*Petrogradsky M. K. Bank* v. *National City Bank,* 253 N. Y. 23, 39).

The jurisdiction of the Surrogate's Court is entirely statutory (*Matter of Hyams,* 237 N. Y. 211; *Matter of Thompson,* 184 N. Y. 36). The authority of the Surrogate to entertain discovery proceedings is found in sections 205 and 206 of the Surrogate's Court Act. It might be well to note that section 206 relating to the nature of the decree that the Surrogate may enter provides: '' If it appears that the petitioner is entitled to the possession of the property, the decree shall direct delivery

thereof to him ". It is well settled that these provisions do not confer jurisdiction upon the Surrogate to compel payment of a debt (*Matter of Hammer,* 261 N. Y. 677; *Matter of Forrest,* 259 N. Y. 553; *Matter of Hitchings,* 281 App. Div. 202).

If jurisdiction did not exist in the Surrogate to make a decree directing the bank to turn over the moneys represented by its deposit, the decree appealed from is a nullity and void. Nothing other than a valid decree would afford protection to the bank, and it is not for us to determine whether the bank's apprehension with respect to double liability should be dispelled by anything less than a valid order.

The present inquiry relates to jurisdiction of the subject matter. The lack thereof can be raised at any time, even on appeal and by the court itself (*Matter of Hitchings, supra*). If there is no jurisdiction of the subject matter, it is the duty of the court to dismiss the proceeding (*Matter of Mathewson,* 210 App. Div. 572).

I disagree with the view of the majority that the question becomes one as to whether the decedent owned the chose in action put in terms of the debt of the bank. The ownership of such a chose in action by the estate is conceded by the bank. The issue is as to the power to direct payment of the debt. The chose in action is not property withheld by the bank. The petitioner has that property. The bank owes a debt. The chose in action, while it is property, is not property capable of delivery, and, therefore, sections 205 and 206 would have no application, even if the proceeding was one for the delivery of the chose in action.

Sections 205 and 206 can only provide for the delivery of specific money or personal property, which belongs to the estate (*Matter of Hyams, supra*), or the value or the proceeds thereof in the event of the disposal of the specific property (*Matter of Wilson,* 252 N. Y. 155). Clearly, this proceeding is not one to follow the proceeds or obtain the value of any specific property adversely disposed of. The debt from a bank to its depositor is not different from any other debt arising on contract. One owing such a debt does not withhold property capable of delivery. The obligation to pay such a debt may only be enforced in a plenary suit. A direction in a decree in a discovery proceeding to turn over property is enforcible by contempt proceedings. To enforce the payment of a debt in this manner would amount to the anachronism of imprisonment for debt.

The 1939 amendments to sections 205 and 206 added nothing to the power of the Surrogate in respect to directing payment

of a bank deposit. The amendments had a two-fold purpose: (1) authorizing a testamentary trustee to bring a discovery proceeding, and (2) permitting the bringing in of a third party claiming the right to possession of the distributed property (see Revisioners' Notes, L. 1939, ch. 343). After the amendments, the proceedings under these sections remained as they always had been, viz. turn-over proceedings. The scope of sections 205 and 206 is not to be enlarged except by legislative direction.

I find no controlling authority which holds that the sections, as they now read, provide for jurisdiction to make a decree to direct a bank to pay a debt represented by a deposit to a petitioner in discovery. *Matter of Akin* (248 N. Y. 202) does not so hold. That case involved a situation where the son of a decedent had taken moneys belonging to the decedent and deposited them in his own name. The proceeding was against the son, who was under no contractual obligation to the decedent or the estate. The bank was not even a party to the turn-over proceeding in that case. The jurisdictional point discussed there was whether in the absence of an answer the proceeding was inquisitorial, and whether delivery of the property could be ordered in such a case except where it conclusively appeared as a matter of law that the respondent's claim to title was unfounded. When the court was discussing jurisdiction, it was referring to that question. Clearly, the court did not attempt to determine the question of jurisdiction to make an order directing a bank to turn over a deposit in a case where the bank was not even a party to the proceeding.

The only case which appears to have directly referred to the question involved herein is *Matter of Jacobsen* (178 Misc. 479). That case also involved adverse claims between an estate and a third party as to moneys on deposit in a bank. Of course, the Surrogate had jurisdiction in such proceeding to decide the question of title or ownership of the disputed fund as between such claimants. The Surrogate in that case, however, went further and stated that the deposit was specific property within the meaning of sections 205 and 206 of the Surrogate's Court Act, a holding which appeared unnecessary to his decision. While acknowledging my great respect for the learned Surrogate who so ruled, I cannot agree with his conclusion that money on deposit with a bank is specific property as between the bank and the depositor. The law is too clearly the other way.

The present case involves no situation of adverse claims to a bank deposit. The only question of fact involved in the present

proceeding was whether Clifford and Trevor were one and the same person. The bank conceded that it owed its depositor money. It denied only the power of the Surrogate to direct it to pay the proceeds of the bank deposit to the administrator in a discovery proceeding.

In my opinion the appellant's contention of lack of jurisdiction was sound, and I vote to reverse the decree and dismiss the proceedings.

DORE, J. P., and BREITEL, J., concur with BERGAN, J.; CALLA-HAN, J., dissents and votes to reverse the decree and dismiss the proceedings, in opinion.

Decree affirmed, with costs.